MISSOURI, K. & T. RY. CO. OF TEXAS v. RENTZ.

(Court of Civil Appeals of Texas. Dallas. Dec. 20, 1913. Rehearing Denied Jan. 17, 1914.)

1. MASTER AND SERVANT (§ 89*)—EXISTENCE OF RELATION.

An employé is deemed to be in the employer's service whenever he is present to perform his duties as servant and subject to orders, though at a given time he may not be engaged in the actual performance of a duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 153–156; Dec. Dig. § 89.*]

2. MASTER AND SERVANT (§ 89*)—EXISTENCE OF RELATION.

Plaintiff was a locomotive engineer in defendant's employ, and, when injured, was in the yards on his way to the roundhouse to take out his engine; it being his custom in going to work to pass through the yards. Plaintiff had reached one of defendant's depot platforms on his way to the roundhouse, when he was called by a fireman on an engine standing in the yards, but continued walking, when another engineer called to him, whereupon he changed his course and crossed another track and stopped, waiting for three or four minutes, for the engineer who had called him, when he was struck by an engine on another track. Held, that the relation of master and servant existed when plaintiff was struck.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 153–156; Dec. Dig. § 89.*]

3. COMMERCE (§ 27*)—MASTER AND SERVANT— ACCIDENTS OR INJURIES — STATUTES APPLICABLE.

Where an engineer, when injured by being struck by a train while going through the yards to his work, was employed by a railroad company engaged in interstate commerce, any claim for damages for such injuries was governed by the federal Employers' Liability Act (April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, § 1322]).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

4. APPEAL AND ERROR (§ 989*)—FINDINGS— CONCLUSIVENESS.

The question of contributory negligence in a railroad employé's action for personal injuries under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) is for the jury in the trial court, and the appellate court will only examine the evidence on the question to determine whether there was any evidence from which the jury could reasonably have found a verdict for plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3897; Dec. Dig. § 989.*]

5. MASTER AND SERVANT (§ 289*)—INJURIES— JURY QUESTIONS — CONTRIBUTORY NEGLIGENCE.

Evidence, in an action for injuries to a railroad engineer by being struck by a train while going through the yards to work, held to make the question of contributory negligence one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

6. MASTER AND SERVANT (§ 144*)—RULES OF EMPLOYER—NONENFORCEMENT.

If a rule of a railroad company, that trains should not exceed a speed of six miles an hour within its yards, was generally ignored by plaintiff and its other employés, and not enforced by the company, its nonenforcement could not be alleged as a ground of negligence by the company in an action by plaintiff engineer for injuries by being struck by another train in the yards; an excess speed not violating any law so as to be negligence per se.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 287; Dec. Dig. § 144.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by R. Rentz against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded for a new trial.

A. S. Coke, of Dallas, and Head, Smith, Hare & Head, of Sherman, for appellant. Wolfe, Wood & Haven, of Sherman, for appellee.

RASBURY, J. Appellee recovered verdict and judgment in the court below against appellant for $6,000 for personal injuries alleged to have been negligently inflicted upon him by appellant by striking appellee with one of its engines while he was passing over and across appellant's platform and tracks in Denison, Tex., on the way to take up his duties as a locomotive engineer for appellant, from which judgment this appeal is taken. The grounds of negligence alleged by appellee and the defenses urged thereto will be sufficiently disclosed in determining the several assignments of error.

The evidence introduced upon trial of the case was conflicting, but in deference to the verdict of the jury it sustains the following conclusions of fact: At the time of the accident appellee was in appellant's employ as switch engineer. His work was performed in appellant's yards in Denison. Appellee, incident to taking up his duties each day, would go from his residence to appellant's roundhouse, where he secured his engine and set about his day's labor. In making his way to the roundhouse it had been his custom, for six or seven years, to go south on Houston avenue (on which avenue he lived), a north and south street, until he reached Gandy street, an east and west street, when he would go east to a point where he would reach appellant's yards, whence he would pursue his way to the roundhouse between tracks 2 and 3; there being at this point six railway tracks. From and at the point where he struck the yards on Gandy street to a point south to Main street, which paralleled Gandy street, the space along his route was the ground or surface depot platform or landing place for appellant's passengers disembarking at its depot situated on the northeast corner of Main street and Houston avenue. This landing place or platform was in part paved with brick and in part spread with gravel. Over this place was laid the

tracks of appellant. It was a depot platform and used as such by the general public and appellant's employés. At the time of the accident, appellee, as was his custom, had proceeded east on Gandy street until he reached the appellant's tracks, at which point he changed his course, got between tracks 2 and 3, and started south for the roundhouse. While so pursuing his way and yet upon the platform, and at a point within about 125 or 150 feet of Main street, the fireman on an engine standing on track four called to appellee, who did not halt, but continued his progress a few steps further, when the engineer motioned and also called to him, at which appellee changed his course southeast and across track 3, stopping on the track barely clearing the first rail of track 3, which put him facing the cab of the engine on track 3. Appellee remained on track 3 waiting for the engineer, who was apparently preparing to leave his engine to speak with appellee, but who consumed some three or four minutes in preparations. As the engineer was between his cab and tank so preparing to dismount, appellee saw in his eyes an expression that caused him "to wonder," and upon looking around he discovered an approaching train right upon him, which struck him before he was able to get off the track. When appellee stepped upon track 3 and before he was struck, he looked in both directions three or four times while so standing, and saw no trains. The train which struck appellee was a regular passenger train. This train arrived practically on schedule on the day it struck appellee. Appellee was familiar with the train schedule. The engine which appellee manipulated for appellant was engaged in interstate traffic. Appellee was employed from day to day. At the time he was injured his hours were from 7 p. m. to 7 a. m. On said day he left home at 6:30 p. m., as we have said, to mount his engine, and was on his way to commence his labor when struck in the manner detailed before reaching same.

[1] Appellant urges by its first assignment of error that the court should have instructed a verdict for appellant for the reason that it appears from the evidence tnat at the time appellee was injured the relation of master and servant did not exist between the parties, and hence his cause of action was not controlled by any statute or rule of decision governing the rights of employer and employé. No complaint is made that the charge of the court incorrectly applied any rule between master and servant, but that the testimony failed to establish such relation, and hence no liability was shown by the evidence. Thus, it will be seen, the single question here is: Was appellee in law, under the undisputed facts, an employé of appellant at the time of his injury? We have just detailed the facts. The general rule in relation to when the master is liable for injuries to the

servant, and when such servant is or is not in the master's employment, is stated with singular clearness and brevity in East Line & Red River R. Co. v. Scott, 71 Tex. 703, 10 S. W. 298, 10 Am. St. Rep. 804, where it is said: "It is true that the employer is only liable as master to the servant when the latter is actually in his service, and that at times, during the period of an engagement, the employé may sustain to the employer no other relation than that of stranger. It does not follow from this, however, that the employé is to be deemed in the employer's service only when he is actually engaged in labor. He is to be deemed in the master's service whenever present to perform his duty under the contract creating the relation of master and servant and subject to orders, although at a given moment he may not be engaged in the actual performance of any labor." In the case from which we have just quoted, it was held that an employé whose duties required him to be with a train, subject to call for duty, the engine of which exploded and injured him, was entitled to recover for such injuries, even though not in the performance of his duties at the time of such injury. Similar is the holding and the facts in St. Louis, S. & T. Ry. Co. v. Welsh, 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839.

In Missouri, Kansas & Texas Ry. Co. of Texas v. Pennewell, 50 Tex. Civ. App. 541, 110 S. W. 758, this court ruled on facts similar to those in the Scott and Welsh Cases, supra. There the injured person had actually entered upon and begun his duties, remaining subject to call, but was not so actually engaged at the time of the injury. Likewise, on the point now under discussion was the holding of this court similar in the facts and the application of the rule in Missouri, Kansas & Texas Ry. Co. v. Balliet, 48 Tex. Civ. App. 641, 107 S. W. 906. The cases cited are distinguishable from the case at bar in that in all the cited cases the employé was either actually engaged in the performance of his duty or present at the place of injury subject to instant call thereto. Here appellee was employed by the day, and while on his way to assume the duties of his employment from which it does not appear that he had been discharged, and while proceeding along the route appellant customarily permitted and allowed its employés to go, he was injured. The case nearest in point cited is Chicago, Rock Island & Texas Ry. Co. v. Oldridge, 33 Tex. Civ. App. 436, 76 S. W. 581. In that case Oldridge, preparatory to assuming his duties as a brakeman, and in order to be ready therefor, took his way to his train, arriving there before his train was "made up" and before his actual duties could begin. It was customary for brakemen to arrive at the location of their trains before they were made up. On reaching the place where his train was to be made up, Oldridge entered a detached caboose which was to be

a part of his train to await the making up of the train, which was also the custom of such employés. While in the caboose Oldridge was injured by the negligence of his fellow servants in attaching the caboose to the train. In determining whether or not Oldridge's cause of action was controlled by the law of master and servant, the court, in holding that it was, said: "The testimony of appellee tended to show that it was customary for freight brakemen, when called to go out with a train, to meet the conductor in the caboose, with the food and clothing required for the journey, while the caboose was yet in the yards, and before the train had been made up. If it be true that appellant's business, as well as that of other railway companies, had been habitually conducted in this manner, as the evidence tended to show, in the absence of a definite rule or positive requirement to the contrary, we could not say that appellee was a mere volunteer when he entered the caboose in this instance. His conduct should be interpreted in the light of the usage or custom pertaining to the service in which he was engaged, and the question was one for the jury."

In the application of the general rule to specific cases, it was held in Boldt v. N. Y. C. R. Co., 18 N. Y. 432, that an employé on his way to begin his labors was in the performance thereof, since he was doing that which was essential to enabling him to discharge his duty; that is, going to the spot where it was to be performed by the route and method customarily permitted and allowed by the master. To the same effect is Powers v. Calcasieu Sugar Co., 48 La. Ann. 483, 19 South. 455. A case much in point is Ewald v. C. & N. W. Ry. Co., 70 Wis. 420, 36 N. W. 112, 591, 5 Am. St. Rep. 178. The Wisconsin Supreme Court, in that case, held that the railroad company was not liable for damages because the same resulted from the negligence of Ewald's fellow servants, but, on the issue as to whether he was in the employ of the railroad while making his way to its roundhouse to begin the duties thereof, said: "Here we have a private pathway over the grounds of the company, granted and allowed to the plaintiff and other employés of the company who worked in the roundhouse, by usage, custom, and consent, for their ingress and egress to and from their work, kept open across the track of the road, and which had been worn and used by himself and others for long time prior to the injury, and that in order to reach the roundhouse it was necessary for him to go upon said pathway and to cross the track of the company at that place. It was the means, and only means, of entrance and exit to and from their work furnished by the company, and the plaintiff and others had a right to its free and uninterrupted use as they always had; and it was because they were the employés of the company in the roundhouse that they had such right and

privilege. It was an essential part and ingredient of the plaintiff's contract of employment, and incidental to it, as much as any means and facilities for his labor in the roundhouse itself furnished by the company. The plaintiff, therefore, while enjoying such privilege and facility, or while passing along that pathway and between the opening of the cars, was an employé and servant of the company, as much as while actually laboring for the company in the roundhouse, and as much within his contract of employment."

[2] In consonance with the authorities cited, we conclude appellee was an employé of appellant at the time of the accident and that the trial court did not err in submitting the case to the jury.

It is contended, however, that when appellee halted in his journey to the roundhouse, stepped upon the track upon which he was injured, and engaged in conversation with his fellow servants, he thereby voluntarily suspended the relation of master and servant, and, his injuries having been received during such suspension, appellant was not liable. Having determined that appellee was in the employ of appellant at the time of the injury, he then comes within that class of cases first cited in this opinion, as illustrated in Railway v. Scott, supra, which hold that though the employé may not be actually engaged in labor that fact does not destroy the relation of master and servant, and accordingly appellant owed appellee the duty of the master to the servant. Such acts by the servant show, at most, either contributory negligence on the part of the servant or a total lack of negligence on the part of the master. We think it may further be safely said that the evidence fails to show a material turning aside from his employment by appellee as contemplated by the adjudicated cases in this state, as where the servant voluntarily and without any necessity therefor turns aside from his duty for his own convenience and goes into a place not necessary or proper in going to or returning from service for the master. S. L. S. Ry. Co. v. Spivey, 97 Tex. 143, 76 S. W. 748; Lynch v. T. & P. Ry. Co., 133 S. W. 523. In the case at bar appellee was pursuing the very pathway over which he had from appellant permission to go in order to perform the essentials of his employment, and it seems to us that what he did was not only not in legal contemplation a turning aside from his employment, but that quite clearly he was entitled to that degree of care from appellant necessary to protect him from the danger incident to the route by which he was passing under the rule applicable between master and servant.

[3] By its third assignment of error appellant asserts that the trial court should have instructed a verdict for appellant because appellee, by the evidence, was guilty of contributory negligence, and being so, and not being an employé of appellant, was

not entitled to recover at all. Having held that appellee was an employé of appellant, there was no error in refusing said peremptory instruction.

Anticipating such a ruling by this court, appellant goes further and asserts that appellee was in the employ of a railway company engaged in interstate commerce, and that any claim for damages sustained by him is controlled by the provisions of the act of Congress concerning interstate commerce, known as the federal Employers' Liability Act, Supp. U. S. Comp. St. 1911, p. 1322, and that the trial court did not properly apply said United States statute in his charge to the jury. We concede the proposition to be correct in asserting that appellee was engaged in interstate commerce, and hence our duty narrows to ascertaining whether the trial judge properly instructed the jury. The federal statute provides that, in all suits against common carriers for damages for injuries to employés, "the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé." The charge of the court on this issue was practically in the precise words of the federal act, and we conclude there was no error in that respect.

[4] It is also contended under this assignment of error that the facts in this case show appellee was guilty of "contributory negligence as a matter of law," which under our state and the federal statutes is to assert that the record discloses "no testimony upon which the jury could reasonably have found a verdict" in favor of appellee, since contributory negligence is a question of fact for the determination of the jury. I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106.

[5] Thus, under the contention here made, our sole function is to examine the evidence and determine therefrom if there was evidence adduced from which "the jury could reasonably have found a verdict." We have done so, and in view of the evidence recited in this opinion, which we are not expected to set out at length, we conclude the court properly submitted the question of contributory negligence to the jury for their determination.

[6] By its sixth assignment of error appellant asserts that the trial court erred in submitting to the jury as a ground of negligence whether appellant violated a rule promulgated by it inhibiting the running of trains at a greater speed than six miles per hour at the point of accident, and directing the jury to find for appellee if such rule was promulgated and violated, and they believed the operation of its trains at a speed in excess of six miles an hour was negligence and was the direct and proximate cause of appellee's injuries. It was not disputed that appellant did promulgate in June, 1907, a rule directing that trains should not exceed a speed of six miles an hour within its yards or the city limits of Denison. Appellee testified, and it was not disputed, that said rule, since its promulgation, had by appellant's employés been generally and habitually violated. The ordinances of the city of Denison make it unlawful to move an engine through its limits at a greater speed than 12 miles an hour. The claim is here made that the undisputed evidence conclusively shows the abrogation of said rule by reason of its nonenforcement by appellant and its general violation by its employés, including appellee. In this contention we agree. Hence the rule being abrogated or canceled by the parties, there was no such rule, and its submission as an independent ground of negligence, if violated by appellee, constituted in our opinion substantial error in view of the sharp conflict in the evidence on the other grounds of alleged negligence and the fact that the verdict was a general one. The case at bar is controlled by the decision of this court in T. & P. Ry. Co. v. Leighty, 32 S. W. 799. In that case the railway company had promulgated a rule requiring all east and west bound trains to pass Choctaw siding under full control in order to avoid collisions with work trains expected to be found on the main line. In violation of the rule, Leighty ran his engine upon the siding at a speed of 20 or 30 miles an hour, striking the tender of an engine on the siding, resulting in Leighty's death. This court found, under the evidence in that case, that the company's employés had ignored the rule from its promulgation to the time of Leighty's death, a period of six months, and that the company had made no attempt to enforce same, and that hence there was no such rule. The trial court, after charging the jury that the violation of the rule by the railway company's employés and the failure of the railway company to enforce same, refused a charge requested by the railway company directing the jury that Leighty's failure to conform to the rule in managing his engine constituted negligence on his part, and would prevent a recovery. In commenting upon the refusal of the trial court to allow the requested charge, this court said: "Appellant. complains of the action of the court in refusing said requested charge and in charging the jury as above set out. The action of the court in these particulars was correct. The abrogation of a rule by the company may be presumed when it is frequently and openly violated for such a length of time as that the company could by the use of ordinary care, have ascertained its nonobservance. When a rule is not observed by employés for a long length of time, and no attempt is made by the company to enforce it, it becomes of no force or effect, and the mere fact of the nonobservance thereof will not be considered contributory negligence in case of injury. Railway Co. v. Scott, 71 Tex. 703, 10 S. W.

298 [10 Am. St. Rep. 804]; Railway Co. v. McMahon, 6 Tex. Civ. App. 601, 26 S. W. 159; Rutledge v. Railway Co., 123 Mo. 121, 24 S. W. 1055 [27 S. W. 327]; Barry v. Railway Co., 98 Mo. 62, 11 S. W. 308 [14 Am. St. Rep. 610]." See, also, T. & N. O. R. Co. v. Conway, 44 Tex. Civ. App. 68, 98 S. W. 1070.

If the general violation of the master's reasonable rules not in violation of any duty imposed upon him by law by the servant, with the acquiescence and knowledge of the master who makes no effort to enforce them, is an abrogation of such rule, and hence furnishes no basis for a charge of negligence against the servant, then it inevitably follows as a corollary that the violation by the servant of the master's rules made for the benefit and protection of the servant in turn affords no basis for a charge of negligence against the master; particularly since it was not negligence per se to operate trains in appellant's yards at a speed in excess of six miles an hour by reason of which it cannot be said that the rule applied in any way conflicts with the rule that habit or custom will in no instance be permitted as an excuse for doing that which the law itself declares to be negligence. G., C. & S. F. Ry. Co. v. Evansich, 61 Tex. 3.

All assignments of error not specifically discussed herein are overruled either because they do not, in our opinion, present any reversible error, or have been disposed of by our conclusions upon those we have discussed.

For the error mentioned, the judgment of the court below is reversed, and the cause is remanded for another trial.